UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA , ex rel. CHRIS PHILLIPS, et al., )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>STEPHEN L. LAFRANCE HOLDINGS, INC., et al., )<br>)<br>Defendants. ) | Case No. 14-CV-0567-CVE-PJC |

## OPINION AND ORDER

Now before the Court are the following motions: Relator Chris Phillips' Motion to Transfer Under 28 U.S.C. § 1404(a), and Memorandum in Support Thereof (Dkt. # 64); Defendants' Motion to Dismiss and Memorandum of Law in Support Pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6) and 9(b) (Dkt. # 97); and the Motion to Dismiss of Defendants Arcadia Valley Drug Co., DaleCo, Inc., and USA Drug & Beauty Franchising System, Inc. (Dkt. # 98). Defendants ask the Court to dismiss this case pursuant to the statutory first-to-file rule of the False Claims Act, 31 U.S.C. 3729 et seq. (FCA), because there is a separate and earlier-filed lawsuit in the United States District Court for the Western District of Oklahoma arising out of the same alleged fraudulent scheme. Relator plaintiff Chris Phillips argues that it would be premature for this Court to consider defendants' requests for dismissal, and he asks the Court to transfer the case to Western District without ruling on the motions to dismiss.

**I.**

On September 24, 2014, Phillips filed this qui tam action alleging that the 13 named defendants participated in a scheme to defraud the United States and the states of Oklahoma and Tennessee. Phillips stated that he was filing the case under the false claims acts of the United States, Oklahoma, and Tennessee, and he would be seeking a percentage of the proceeds depending on the decision of the federal and state governments to intervene in this matter. Dkt. # 2, at 7. The case was sealed until the United States, Oklahoma, and Tennessee completed their investigations, and the federal and state governments requested several extensions of their deadline to complete their investigations.

Phillips claims that government health plans reimburse providers such as defendants for prescription drug claims by paying the lower of "the pharmacy provider's usual and customary (U & C) price" or "one or more alternative price types (APT)." Id. at 14. The U & C price is typically the price charged to customers who do not submit an insurance claim and pay for the prescription drugs with cash. Id. at 14, 16-17. Beginning in 2006 or 2007, pharmacies began offering cash customers significantly discounted prices on certain generic prescription drugs, and Phillips claims that pharmacies are obligated to use these discounted prices as the U & C price for billing government health plans. Id. at 23-24. However, Phillips alleges that pharmacies concealed the discounted prices offered to cash customers from government health plans and reported inflated prices for generic prescription drugs when submitting claims for reimbursement to government health plans. Id. at 25. Phillips also claims that pharmacies developed a second fraudulent scheme related to U & C pricing. Under this scheme, pharmacies that received payment from a government health plan on a prescription drug claim would reverse the initial claim and submit a "new claim

with an impromptu, contrived, substantially higher U & C price gauged to capture every available dollar under the payer's reimbursement methodology." Id. at 26. Phillips states that he was employed as a pharmacist at a Med-X-Drug store located in Moore, Oklahoma from November 2009 to September 2012. The ownership of the store changed several times during Phillips' employment, but Walgreen Co. (Walgreens) eventually owned the store after acquiring USA Drug & Beauty Market Franchising System, Inc (USA Drug) in September 2012. Id. at 29. Phillips claims USA Drug had a practice of matching discounted prices on generic prescription drugs offered by competitors, but this price matching program was not extended to third party payers or governmental health plans. Id. at 30, 32. Phillips alleges that Walgreens continued to match competitor prices for generic prescription drugs for cash customers and reported higher prices to third party payers, such as governmental health plans. Id. at 35-36. The complaint (Dkt. # 2) alleges two claims under the FCA (counts one and two) and a third claim alleging violations of the false claims acts of Oklahoma and Tennessee. Id. at 60-61.

Prior to the filing of this action, on May 14, 2013, J. Douglas Strauser filed a qui tam action on behalf of the United States and the states of New Jersey, Tennessee, and Oklahoma alleging that many of the same defendants named in Phillips' complaint defrauded government health plans in violation of the FCA. United States of America ex rel J. Douglas Strauser et al. v. Stephen L. LaFrance Holdings, Inc. et al., 13-CV-498-M (W.D. Okla.). Strauser filed the case in the Western District of Oklahoma, and the case was sealed. The operative pleading in the case is the amended complaint filed by Strauser on March 2, 2015. Dkt. # 81-2. Strauser states that he resides in Missouri and he owned and operated several pharmacies. Id. at 6. Strauser sold his pharmacy business in 2008, and the business was later owned by Walgreens after the pharmacies changed

hands several times. Id. The amended complaint explains the process for billing federal and state Medicaid programs for pharmaceutical drugs, and pharmacies must charge Medicaid the lowest possible rate, which is ordinarily the U & C price. Id. at 27. Strauser sets forth the basis for determining the U & C charge under various state and federal Medicaid programs, and the amended complaint also describes the U & C pricing clauses utilized by pharmacies that submit claims for reimbursement to Medicare. Id. at 29-40. Strauser claims that, in or about 2008, pharmacies operated by USA Drug and its affiliates instituted a program of charging cash customers $4 for a 30 day supply and $10 for a 90 day supply of generic prescription drugs. Id. at 41-44. USA Drug directed its pharmacies to use billing software and it inputted the U & C prices for drugs that were billed to third party payers or governmental health plans in order to get the maximum possible reimbursement. Id. at 46. USA Drug allegedly directed pharmacies to override these higher prices with the $4 or $10 prices for cash customers. Id. at 46-47. Strauser claims that Walgreens continued this practice when it purchased the pharmacies from USA Drug. Id. at 48. Strauser alleges that USA Drug and Walgreens intentionally overbilled Medicaid and Medicare by failing to use the reduced prices for generic prescription drugs that they offered to cash customers as the U & C charge. Id. at 50-52. The amended complaint alleges claims under the false claims acts of the United States, New Jersey, Oklahoma, and Tennessee. Id. at 65-67.

On April 30, 2018, the government plaintiffs notified Phillips and Strauser that they would decline to intervene, and both cases were unsealed. Phillips filed a motion asking the Court to transfer this case to the Western District of Oklahoma, and he states that a comparison of the complaints in this case and Strauser shows a "substantial overlap between the parties they have sued and the factual and legal allegations." Dkt. # 64, at 3. Phillips claims that Strauser "involve[s] many

4

of the same parties, transactions, and legal issues that are at issue in the present case," and he states that he would seek consolidation of this case with Strauser if the case were transferred to the Western District of Oklahoma. Id. at 1, 4. Defendants USA Drug, Daleco, Inc. (Daleco), and Arcadia Valley Drug Co. (Arcadia) filed a response to the motion to transfer and stated that they would be filing a motion to dismiss based on the first-to-file rule under the FCA. Dkt. # 66, at 8. These defendants have filed a motion to dismiss arguing, inter alia, that this case should be dismissed under the first-to-file rule, because it is undisputed that Strauser was filed first and the relator plaintiff in Strauser has asserted claims based on the same facts against the same defendants. Dkt. ## 98, 99.

In Strauser, several of the defendants, including Arcadia and Daleco, have filed a motion to transfer the case to the Northern District of Oklahoma under 28 U.S.C. § 1404(a). United States of America ex rel. J. Douglas Strauser et al. v. Stephen L. LaFrance Holdings Inc., 13-CV-495-M, Dkt. # 64 (W.D. Okla.). Also in Strauser, Walgreens, Arcadia, Daleco, and other defendants have also filed motions to dismiss, arguing that the relator plaintiff has failed to plead his claims with particularity as required by Fed. R. Civ. P. 9(b) and that the amended complaint fails to identify any specific contractual provision allegedly violated by defendants. Strauser, Dkt. ## 87, 88, 89. These motions are still pending. Phillips "acknowledges that his [c]omplaint should be barred by the first-to-file rule if all claims in the *Strauser* action proceed," but he argues that it would be premature for this Court to rule on the pending motions to dismiss until the Western District of Oklahoma has determined whether Strauser should be dismissed. Dkt. # 119, at 25.

**II.**

In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must determine whether the claimant has stated a claim upon which relief may be granted. A motion to dismiss is properly granted when a complaint provides no "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). A complaint must contain enough "facts to state a claim to relief that is plausible on its face" and the factual allegations "must be enough to raise a right to relief above the speculative level." Id. (citations omitted). "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 562. Although decided within an antitrust context, Twombly "expounded the pleading standard for all civil actions." Ashcroft v. Iqbal, 556 U.S. 662, 683 (2009). For the purpose of making the dismissal determination, a court must accept all the well-pleaded allegations of the complaint as true, even if doubtful in fact, and must construe the allegations in the light most favorable to a claimant. Twombly, 550 U.S. at 555; Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 (10th Cir. 2007); Moffett v. Halliburton Energy Servs., Inc., 291 F.3d 1227, 1231 (10th Cir. 2002). However, a court need not accept as true those allegations that are conclusory in nature. Erikson v. Pawnee Cnty. Bd. of Cnty. Comm'rs, 263 F.3d 1151, 1154-55 (10th Cir. 2001). "[C]onclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." Hall v. Bellmon, 935 F.2d 1106, 1109-10 (10th Cir. 1991).

# III.

Defendants ask the Court to dismiss this case under the FCA's first-to-file rule, because there is no dispute that <u>Strauser</u> is the first-filed case and both cases assert the same claims against the same defendants.[1] Phillips argues that defendants' request for dismissal is premature and he asks the Court to transfer this case to the Western District of Oklahoma without ruling on the motions to dismiss. Dkt. # 119, at 11-12, 24-26.

"The FCA 'covers all fraudulent attempts to cause the government to pay out sums of money,'" and the qui tam provision of the FCA allows a private citizen to bring an FCA claim on behalf of the United States government to recover for the payment of fraudulent claims. <u>United States ex rel. Conner v. Salina Regional Health Center, Inc.</u>, 543 F.3d 1211 (10th Cir. 2008) (quoting <u>United States ex rel. Boothe v. Sun Healthcare Group, Inc.</u>, 496 F.3d 1169, 1172 (10th Cir. 2007)). The FCA provides that any person who:

> (A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;
>
> (B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim; [or]
>
> (C) conspires to commit a violation of subparagraph (A), (B), (D), (E), (F), or (G)
> . . .

is liable to the United States for a civil penalty of not less than $5,000 and not more than $10,000 per false claim. 31 U.S.C. § 3729(a). However, "[w]hen a person brings an action under this

---

[1] The false claims acts of Oklahoma and Tennessee have virtually identical provisions to the FCA prohibiting multiple or duplicate claims, and the parties do not argue that the outcome of the first-filed issue would be different under state law. See OKLA. STAT. tit. 63, § 5053.2(B)(5); TENN. CODE ANN. § 4-18-104(c)(10). Therefore, the Court will not engage in a separate analysis as to Phillips' claims under state law, and his state law claims will be subject to dismissal if his FCA claim is dismissed under the first-to-file rule.

subsection, no person other than the Government may intervene or bring a related action based on the facts underlying the pending action." 31 U.S.C. § 3730(b)(5).

The Tenth Circuit has considered what constitutes a "related action" for the purpose of § 3730(b)(5). In <u>Grynberg v. Koch Gateway Pipeline Co.</u>, 390 F.3d 1276 (10th Cir. 2004), the district court dismissed a qui tam action under the first-to-file rule after it determined that the "operative claim" raised by the relator plaintiff had been asserted in a previously filed qui tam action. <u>Id.</u> at 1278. The Tenth Circuit rejected arguments that dismissal is appropriate only if both pending cases rely on identical facts, because an identical facts test "would be contrary to the plain meaning of the statute, which speaks of 'related' qui tam actions, not identical ones." <u>Id.</u> at 1279. "Rather, so long as a subsequent complaint raises the same or a related claim based in significant measure on the core fact or general conduct relied upon in the first qui tam action, the § 3730(b)(5)'s first-to-file bar applies." <u>Id.</u> Although <u>Grynberg</u> describes the first-to-file rule as jurisdictional, the Tenth Circuit has acknowledged that intervening Supreme Court precedent has "clarified the distinction between jurisdictional rules and claim-processing rules," and the Tenth Circuit has declined to determine whether the FCA's first-to-file rule is jurisdictional. <u>United States ex rel. Little v. Triumph Gear Systems, Inc.</u>, 870 F.3d 1242, 1251 (10th Cir. 2017). However, violation of the first-to-file rule is a basis to dismiss a plaintiff's claims under Rule 12(b)(6). <u>Id.</u>

Phillips claims that the defendants are taking contradictory positions before this Court and the Western District of Oklahoma, and he argues that it would be premature for this Court to dismiss his claims based on the first-to-file rule. Phillips argues that "the key question for a district court in applying the first-to-file provisions is whether the earlier-filed qui tam action put the government and the defendants 'on notice' of the 'same essential claim' as that brought by the second relator."

8

Dkt. # 119, at 25. Phillips equates defendants' motions to dismiss in the Strauser case as arguments that the relator plaintiff has not provided adequate notice of his claims, and Phillips claims that the Western District should be permitted to rule on the pending motions to dismiss before this Court takes up the first-to-file issue. Phillips claims that defendants are taking a contradictory position by arguing in Strauser that the relator plaintiff has failed to provide adequate notice of his claims and by seeking to have this case dismissed as an impermissible second qui tam action.

The Court will initially consider whether this case should be treated as a "related action" to the earlier-filed Strauser case. The plain language of § 3730(b)(5) states that when a person "brings" a qui tam action no other person may intervene or "bring a related action based on the facts underlying the pending action." The Supreme Court has interpreted "pending action" to mean "remaining undecided" or "awaiting decision," and has explained that an earlier-filed case would not qualify as a pending action that bars a subsequent case once it is dismissed. Kellogg Brown & Root Servs, Inc. v. United States ex rel. Carter, 135 S. Ct. 1970 (2015). Phillips does not dispute that he is bringing a "related action" to the Strauser case. In fact, Phillips admits that this case is a "related action" that is subject to dismissal if the Court determines that Strauser is a "pending action" for the purpose of § 3730(b)(5). Dkt. # 119, at 25 ("Relator acknowledges that his [c]omplaint should be barred by the first-to-file rule if all claims in the *Strauser* action proceed."). The Court has reviewed the allegations of Phillips' and Strauser's pleadings, and both cases are clearly based on the same alleged scheme to overcharge governmental health plans in comparison to the prices paid by cash customers for generic prescription drugs. The Court finds that both cases assert the same essential claim and are related actions under § 3730(b)(5). Phillips seems to be arguing that Strauser cannot be considered a "related action" until the Western District of Oklahoma

9

rules on the pending motions to dismiss. However, the Supreme Court does not require that another district court certify that the relator plaintiff in the earlier-filed case has stated a claim upon which relief can be granted, and an earlier-filed cased must simply "remain undecided" or be "awaiting decision" to qualify as a "pending action." Strauser certainly meets this standard, as it is a pending case that is awaiting a ruling on the merits of the relator plaintiff's claims, and the Court rejects Phillips' argument the cases cannot be deemed related actions until the Western District of Oklahoma rules on the defendants' motions to dismiss in Strauser.

The Court finds that the first-to-file rule mandates dismissal of Phillips' claims and it is not necessary to consider his request to transfer this case to the Western District of Oklahoma. Phillips argues that defendants have taken contradictory positions by seeking dismissal of Strauser and this case. The Court disagrees and finds that defendants have not taken contradictory positions before two different courts. There is nothing contradictory about asserting that the relator plaintiff in Strauser has failed to adequately plead his claims under the Federal Rules of Civil Procedure and that Phillips' claims in a later-filed action should be dismissed under a mandatory first-to-file rule. Section 3730(b)(5) is an express "statutory command" that no person may bring a second qui tam action based on the same or related facts once a case has already been filed, and the appropriate remedy is dismissal of the later-filed action. United States ex rel. Shea v. Cellco Partnership, 863 F.3d 923, 929 (D.C. Cir. 2017). There is nothing about this statutory command to dismiss a later-filed action that precludes a defendant from challenging the validity of the claims asserted in the earlier-filed case. Phillips concedes that his case was filed after Strauser and that both cases arise out of the same alleged fraudulent scheme, and the FCA requires this Court to dismiss Phillips' later-filed action.

The parties dispute whether Phillips' claims should be dismissed with or without prejudice. Defendants ask the Court to dismiss Phillips' claims with prejudice because Phillips will not be able to file an amended complaint renewing his claims in this case even if Strauser were dismissed. Dkt. # 120, at 13. Phillips argues that he could refile his claims in a new lawsuit if Strauser is dismissed by the Western District of Oklahoma. This argument is supported by the Supreme Court's decision in Kellogg Brown, in which the Supreme Court found that a qui tam plaintiff could refile a case that had been dismissed on first-to-file grounds when the earlier-filed qui tam action had been dismissed. Kellogg Brown & Root Servs., Inc., 135 S.Ct. at 1979. The Court also takes into account that defendants have argued that this case should be dismissed for lack of subject matter jurisdiction under the first-to-file rule. Without reaching the issue of jurisdiction versus a claims-processing rule, and relying on defendants' formulation of their motions, dismissals for lack of jurisdiction must be without prejudice and do not have preclusive effect, because dismissal with prejudice is akin to a ruling on the merits of a plaintiff's claims. Brereton v. Bountiful City Corp., 434 F.3d 1213, 1218 (10th Cir. 2006). The Court will dismiss Phillips' claims without prejudice to refiling.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss and Memorandum of Law in Support Pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6) and 9(b) (Dkt. # 97) and the Motion to Dismiss of Defendants Arcadia Valley Drug Co., DaleCo, Inc., and USA Drug & Beauty Franchising System, Inc. (Dkt. # 98) are **granted**. A separate judgment of dismissal is entered herewith.

**IT IS FURTHER ORDERED** that Relator Chris Phillips' Motion to Transfer Under 28 U.S.C. § 1404(a), and Memorandum in Support Thereof (Dkt. # 64) is **moot**.

**DATED** this 4th day of October, 2018.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE